IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
                              )
IVICA (JOHN) BOGDAN,          )
                              )
     Plaintiff,               )
                              )
     v.                       )        1:05CV00568
                              )
HOUSING AUTHORITY OF THE CITY )
OF WINSTON-SALEM, SILAS       )
DERVIN, MELANIE WILLIAMS,     )
UNKNOWN NAMED EMPLOYEES OF    )
HOUSING AUTHORITY OF THE CITY )
OF WINSTON-SALEM,             )
                              )
     Defendant.               )
```

MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge

Plaintiff Ivica (John) Bogdan filed this action against
Defendant Housing Authority of Winston Salem ("HAWS"), Defendants
Silas Dervin ("Dervin"), and Melanie Williams ("Williams"), in
their individual capacities, and Unknown Named Defendants ("Doe
Defendants") (collectively, "Defendants") alleging breach of
contract and discrimination based on race and national origin.
Pending before this court are Defendants' motion to strike and
motion to dismiss. For the reasons stated below, the court will
grant Defendants' motion to strike and will grant in part and
deny in part Defendants' motion to dismiss.

## I.   FACTUAL BACKGROUND

Defendant HAWS operates several apartment complexes that benefit low and moderate income residents of Winston-Salem. (First Am. Compl. ¶ 13.)  In order to keep the residential units habitable, HAWS contracts with various private sector vendors to perform maintenance and repair work.  (<u>Id.</u> ¶ 14.)  Plaintiff, a Caucasian and native of Yugoslavia, entered into a contract with HAWS to repair vacant housing units at the Cleveland Avenue Homes Apartments.  (<u>Id.</u> ¶ 15.)  According to the terms of the contract, Plaintiff was to perform various repair services for one year under the direction of HAWS and the maintenance supervisor.  (<u>Id.</u> ¶¶ 15-16.)  The contract required him to seek written permission from the maintenance supervisor in order to obtain building materials.  (<u>Id.</u> ¶ 17.)  It also limited Plaintiff's annual compensation to a maximum of $60,000.  (<u>Id.</u> ¶ 18.)

From March to June 2004, Plaintiff completed twenty-nine projects while working under the supervision of C. K. Reid, the maintenance supervisor.  (<u>Id.</u> ¶ 19.)  In July 2004, however, HAWS hired Defendant Dervin to replace Mr. Reid.  (<u>Id.</u> ¶ 20.) Plaintiff alleges that Mr. Dervin made it clear upon his arrival that he wanted to replace Plaintiff with a black contractor. (<u>Id.</u>)  In order to achieve this goal, Mr. Dervin frustrated Plaintiff's ability to carry out his contractual duties by denying Plaintiff's permission requests for maintenance project materials and refusing to meet with him.  (<u>Id.</u>)

On July 28, 2004, Defendants replaced Plaintiff with a black contractor and informed Plaintiff that his contract had been terminated.[1]  (Id. ¶ 21.)  Plaintiff later learned that Defendants Dervin and Williams represented to HAWS that Plaintiff failed to complete several projects and that his work was unsatisfactory.  (Id. ¶¶ 23, 26.)  Upon discovering these facts, Plaintiff filed this suit.

## II.  PROCEDURAL HISTORY

Plaintiff originally filed a complaint in this court on March 9, 2005, and the complaint was voluntarily dismissed a month later.  On May 20, 2005, Plaintiff initiated a similar claim in Forsyth County Superior Court, alleging a breach of contract and race discrimination in violation of Title VI and 42 U.S.C. § 1981.  Defendants removed the claim to this court and subsequently filed a motion to dismiss.  In response to Defendants' action, Plaintiff sought leave to amend his complaint.  The court granted Plaintiff's motion, allowing him to file his First Amended Complaint.  Defendants answered the amended complaint, including with it a renewed motion to dismiss.[2]  After discovering that the filed First Amended Complaint differed from the proposed First Amended Complaint (the

---

[1] Plaintiff was orally notified of his contract termination on July 28, 2004, and he received written notification on two separate occasions:  August 13 and September 21, 2004.  (Id. ¶¶ 21-27.)

[2] Under Local Rule 7.3(a), each motion should be set out in a separate pleading.

3

version Plaintiff submitted with his motion to amend), Defendants filed a motion to strike.  Both motions are now before the court.

## III. LEGAL STANDARD

Defendants submitted a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  When analyzing a Rule 12(b)(6) motion, a court is not to decide if a plaintiff will ultimately prevail, but, rather, the court must assess whether plaintiff should even be allowed to present evidence of his claim.  Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party and allegations made therein are taken as true.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).  A court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102 (1957).  A plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978).  "Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim."  Estate of Williams-Moore v. Alliance

4

<u>One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

**III. ANALYSIS**

Defendants claim that Plaintiff's First Amended Complaint is not appropriately before this court because it is significantly different from the proposed version attached to the motion to amend. Defendants also seek to dismiss Plaintiff's Title VI and § 1981 claims under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to state a claim for which relief may be granted.[3] The court will first address Defendants' motion to strike and then their motion to dismiss.

**A. Defendants' Motion to Strike**

Defendants argue that Plaintiff improperly added claims and allegations to the filed amended complaint that were not present in the proposed amended version submitted with the motion to amend. This claim requires the court to determine whether a filed amended complaint that differs from a proposed amended complaint violates the Federal Rules of Civil Procedure.

In order to amend a complaint after service of a responsive pleading, Rule 15 requires a party to obtain consent from the adverse party or seek leave to amend from the court. Fed. R. Civ. P. 15(a). At this stage in the proceeding, a plaintiff no longer has an absolute right to amend the complaint, but must seek permission from the court. <u>Id.</u>; <u>see also</u> <u>Medigen, Inc. v.</u>

_____

[3] Defendants seek dismissal of the substantive claims, as well as dismissal of the Doe Defendants as parties to the suit.

5

<u>Public Serv. Comm'n</u>, 985 F.2d 164, 167 (4th Cir. 1993). Granting leave to amend rests within the sound discretion of the court, but should "be freely given when justice so requires." <u>Medigen, Inc.</u>, 985 F.2d at 167 (citing Fed. R. Civ. P. 15(a)).

When a plaintiff requests leave to amend, she includes an attachment of the proposed amendment with the Rule 15 motion. <u>See</u> <u>Roskam Baking Co. v. Lanham Mach. Co.</u>, 288 F.3d 895, 906 (6th Cir. 2002) ("[T]he court must be provided with a proposed amended complaint or at least the substance of the proposed amendment."); <u>Harris v. City of Auburn</u>, 27 F.3d 1284, 1287 (7th Cir. 1994) ("[T]he failure to tender an amended complaint with a motion to alter judgment may indicate a lack of diligence or good faith."); <u>Bownes v. Gary</u>, 112 F.R.D. 424, 425 (D. Ind. 1986) ("Common sense dictates that a party requesting leave to file an amended pleading must accompany his motion with a copy of the proposed amended complaint that complies with the general rules of pleading in Fed. R. Civ. P. Rule 8(a)."); <u>Williams v. Wilkerson</u>, 90 F.R.D. 168, 170 (D. Va. 1981) (When a plaintiff seeks leave to amend his complaint, "a copy of the proposed amended pleading, and not simply the proposed amendment, must be attached to the motion."); <u>see also</u> 4 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1485 at 603 (1990). The motion to amend, and likewise the proposed amendment, must then comply with Rule 7(b)(1), which requires the moving party to give notice to the court and include the basis for which the amendment is sought. Fed. R. Civ. P. 7(b)(1); <u>see also</u> <u>Calderon v. Kansas Dep't of</u>

<u>Social & Rehab. Servs.</u>, 181 F.3d 1180, 1187 (10th Cir. 1999).
Though the failure to include a proposed amended complaint with
the motion is not necessarily fatal, <u>Davis v. United States</u>, 961
F.2d 53, 57 (5th Cir. 1991), courts require submission of the
proposal in order to determine whether granting the motion is
warranted.  <u>Guam v. American Pres. Lines</u>, 28 F.3d 142, 150 (D.C.
Cir. 1994); <u>Roskam Baking Co. v. Lanham Mach. Co.</u>, 288 F.3d 895,
906 (6th Cir. 2002); <u>Otto v. Variable Annuity Life Ins. Co.</u>, 814
F.2d 1127, 1139 (7th Cir. 1986).

     As a matter of course, the proposed amended complaint
becomes the official amended complaint once the court grants a
party's motion.  Courts follow this unwritten rule because the
proposed amended complaint is the document that the court
implicitly approved under its discretionary powers.  <u>See</u> <u>Foman v.</u>
<u>Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (In the
exercise of its discretion, the Court must consider whether there
is "undue delay, bad faith or dilatory motive on the part of the
movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party . . .
[or] futility of amendment.").  The failure to file the same
amended complaint as the one proposed is not only a violation of
Rule 15, but in some cases, it can be grounds for sanctions.  <u>See</u>
<u>Dover Steel Co. v. Hartford Accident & Indem. Co.</u>, 151 F.R.D.
570, 575 (D. Pa. 1993).

     In this case, Plaintiff filed an amended complaint that
differs from the version originally attached to his motion to

7

amend.  Though the court granted the motion for leave, it did not give Plaintiff permission "to file any old amended complaint that it wished to file--it had permission to file its Proposed Complaint."  Dover Steel Co. v. Hartford Accident & Indem. Co., 151 F.R.D. 570, 574 (D. Pa. 1993).  Allowing parties to file amended documents that are not identical in all material aspects goes against the spirit and purpose of Rule 15 and undermine a court's discretion.  A firm rule requiring that a proposed amended document be the actual filed document encourages efficiency by requiring attorneys to be fully prepared when seeking leave from the court.  This court, therefore, finds that Plaintiff's filed First Amended Complaint violates Rule 15 and will adopt the proposed version.  (Pl.'s Mot. Leave Am. Compl. Ex. 1.)

**B. Motion to Dismiss**

Plaintiff seeks relief for race/national origin discrimination under two theories:  Title VI, 42 U.S.C. § 2000d and Title VII, 42 U.S.C. § 1981.  Defendants argue that Plaintiff's complaint should be dismissed for failure to state a claim under Rule 12(b)(6).  The court will address Plaintiff's Title VI action first, followed by his Title VII claim.

**1. Plaintiff's Title VI Claim**

Defendants contend that Plaintiff's claim under Title VI is legally insufficient because:  (1) Plaintiff cannot maintain an employment discrimination claim when the primary purpose of HAWS's federal funding is not for employment, and (2) Plaintiff

8

cannot otherwise bring an action under Title VI when he is not an
intended beneficiary of the federal funds.  The issue before the
court, therefore, is whether a plaintiff who suffers
discrimination from an entity receiving federal assistance may
proceed with a suit under Title VI if that plaintiff is neither
an employee of the agency, nor an intended beneficiary of the
federally assisted program.[4]  In light of the plain language and
precedential interpretation of the statute, this court holds that
a suit is appropriate.

Title VI, section 601 states:  "[n]o person in the United
States shall, on the ground of race, color, or national origin,
be excluded from participation in, be denied the benefits of, or
be subjected to discrimination under any program or activity
receiving Federal financial assistance."  42 U.S.C. § 2000d
(2006).  The twin purposes of Title VI are "to avoid the use of
federal funds to support discriminatory practices," and "to
provide individual citizens with effective protection against
those practices."  Chowdhury v. Reading Hosp. & Medical Ctr., 677
F.2d 317, 319 (3d Cir. 1982) (citing Cannon v. Univ. of Chicago,
441 U.S. 677, 704, 99 S. Ct. 1946, 1961 (1979)).  This statute
utilizes "Congress's power under the Spending Clause, U.S.
Const., art. I, § 8, cl. 1, to place conditions on the grant of

_____

[4] Plaintiff does claim that he is an intended beneficiary of
the federal funds.  The intended beneficiaries of funds provided
for affordable housing, however, are those who qualify as
tenants.  This conclusion does not prevent Plaintiff from
qualifying as a participant in or having a logical nexus to a
federally funded program.  See Part III, Section B(1).

9

federal funds." <u>Barnes v. Gorman</u>, 536 U.S. 181, 186, 122 S. Ct. 2097, 2100 (2002). Title VI essentially creates a contract between the Government and recipient of the funds, "conditioning an offer of federal funding on a promise by the recipient not to discriminate." <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 286, 118 S. Ct. 1989, 1997 (1998). The remedial measures available under section 601, however, have been limited by the Supreme Court to apply only in situations involving intentional discrimination. <u>Alexander v. Sandoval</u>, 532 U.S. 275, 280, 121 S. Ct. 1511, 1516 (2001).

Defendants first suggest that dismissal of Plaintiff's claim is warranted because Plaintiff, as an employee of HAWS, was required to allege that the primary purpose of the funding HAWS receives is for employment. Plaintiff contends that this limitation is inapplicable at the pleading stage, and, in the alternative, that he is not an employee and, therefore, not subject to this limitation.

In order to establish a prima facie case of national origin discrimination against an employer receiving federal funds under Title VI, a plaintiff must allege that the primary purpose of those funds is for employment. 42 U.S.C. § 2000d-3 (2006). The courts in the Fourth Circuit interpret this section under the guidance of <u>Trageser v. Libbie Rehabilitation Ctr., Inc.</u>, 590 F.2d 87, 89 (4th Cir. 1978). <u>See</u> 6 Larson, Employment Discrimination § 117.04 (2006). In <u>Trageser</u>, the Fourth Circuit established a test for determining what satisfies the section 604

10

"primary objective" requirement.  It stated that "because of §
604, Title VI does not provide a judicial remedy for employment
discrimination by institutions receiving federal funds unless (1)
providing employment is a primary objective of the federal aid,
or (2) discrimination in employment necessarily causes
discrimination against the primary beneficiaries of the federal
aid."  <u>Trageser</u>, 590 F.2d at 89.  A court, therefore, will
dismiss a plaintiff's Title VI claim when the plaintiff fails to
allege that the defendants receive federal financial assistance
for the primary purpose of providing employment.  <u>Grimes v.
Superior Home Health Care</u>, 929 F. Supp. 1088, 1094 (M.D. Tenn.
1996); <u>see also</u> <u>Allen v. Ctr. for Creative Leadership</u>, 2006 U.S.
Dist. LEXIS 42202 (M.D.N.C. 2006).

        Plaintiff's amended complaint lacks this needed element.  In
his defense, Plaintiff directs this court to <u>Fobbs v. Holy Cross
Health Sys. Corp.</u>, 29 F.3d 1439 (9th Cir. 1994), for the
proposition that Plaintiff need not allege in his complaint that
the primary purpose of the federal assistance is for providing
employment.  Though the Ninth Circuit in <u>Fobbs</u> did not require
the plaintiff to allege the primary purpose element in his
pleading, Plaintiff must recognize that this interpretation is
contrary to the precedent set in the Fourth Circuit.
Accordingly, this court is "bound to apply circuit precedent
until it is either overruled en banc or superseded by a decision

11

of the Supreme Court."[5]  <u>Chisolm v. Transouth Fin. Corp.</u>, 95 F.3d
331, 337 n.7 (4th Cir. 1996) (citation omitted).

This result does not necessarily lead to a dismissal because
Plaintiff claims that he was not an employee of HAWS, but rather
an independent contractor.[6]  When the discrimination alleged is
not a result of employment practices, the exemption in section
604 does not apply.  Defendants claim, however, that Plaintiff
must be an intended beneficiary of the federal funds if he is not
proceeding as an employee.  Citing <u>Ingram v. Morgan State Univ.</u>,
1996 U.S. App. LEXIS 457 (4th Cir. 1996), Defendants boldly claim
that "Fourth Circuit caselaw clearly requires a Title VI
plaintiff to establish that he is the 'intended beneficiary' of
federal financial assistance."  (Defs.' Second Mot. Dismiss at
7.)  This court cannot determine how Defendants reached this
conclusion citing to only one unpublished case that involved a
completely unrelated issue to the one at hand.

In <u>Ingram</u>, the Fourth Circuit issued an opinion affirming a
district court decision to dismiss a plaintiff's claims under
Rule 12(b)(6).  The opinion is no longer than two paragraphs, one
sentence of which is dedicated to discussing the Title VI claim.

_____

[5] This court has already considered this issue in <u>Luallen v.
Guilford Health Care Ctr.</u>, 2003 U.S. Dist. LEXIS 23241, 2003 WL
23094916 (M.D.N.C. 2003), holding that "Title VI only provides a
cause of action in <u>employment disputes</u> when a primary objective
of the Federal financial assistance is to provide employment."
<u>Luallen</u>, 2003 U.S. Dist. LEXIS 23241 at *32, 2003 WL 23094916, at
*10 (emphasis added).

[6] Despite Defendants' adamant contentions to the contrary,
section 604 only applies in employment discrimination disputes,
and not any claim made under Title VI.

The court stated: "Her Title VI claim fails because Appellant has not alleged that the Defendants receive federal financial assistance for the primary purpose of employment, or that she was the intended beneficiary of any such assistance. <u>Ingram</u>, 1996 U.S. App. LEXIS 457 at 2 (citing 42 U.S.C. § 2000d-3 (1988); <u>Soberal-Perez v. Heckler</u>, 717 F.2d 36, 38 (2d Cir. 1983)).

Though the Fourth Circuit did not elaborate on its decision in <u>Ingram</u>, it did cite to a Second Circuit case, <u>Soberal-Perez v. Heckler</u>, 717 F.2d 36, 38 (2d Cir. 1983), for authority. In <u>Soberal-Perez</u>, the Second Circuit held that the district court correctly determined that Title VI does not apply to direct benefit programs, like Social Security, because they are directly administered by the federal government. <u>Id.</u> at 38. The court determined that "congress intended Title VI to apply to programs or activities involving three parties: a federal agency, a state or local intermediary administering the program, and an ultimate beneficiary." <u>Id.</u> at 39. On its face, this statement seems to require any person bringing a Title VI action to be "an ultimate beneficiary," of federal funding. The court, however, used the term "ultimate beneficiary" as a generic reference to a private third party. In fact, the Second Circuit borrowed this term directly from the Supreme Court's decision in <u>Guardians Ass'n v. Civil Serv. Comm'n of New York</u>, 463 U.S. 582, 103 S. Ct. 3221 (1983). <u>Id.</u> at 40. In <u>Guardians Association</u>, the Supreme Court stated: "[b]ecause Title VI is intended to ensure that 'no person' is subject to discrimination in federally assisted

13

programs, private parties function as third-party beneficiaries to these contracts." Guardians Ass'n, 463 U.S. at 633, 103 S. Ct. at 3249 (citation omitted). The broad references to "person" and "private parties" emphasize Title VI's wide application to those who suffer discrimination from a federally assisted entity.

According to the modern trend in the Fourth Circuit, a plaintiff need allege only that he is within the zone of interests sought to be protected by Title VI. Md. State Conf. of NAACP Branches v. Md. Dep't of State Police, 72 F. Supp. 2d 560, 567 (D. Md. 1999) (citing Bryant v. New Jersey Dep't of Transp., 998 F. Supp. 438, 443-46 (D. N.J. 1998)). The court in Md. State Conf. of NAACP Branches mentioned that the Supreme Court explicitly rejected the "intended beneficiary" test for APA claims, requiring only that a plaintiff be in the zone of interests that the statute sought to protect. Id. (citing Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co., 522 U.S. 479, 118 S. Ct. 927 (1988)). This court, therefore, will allow Plaintiff's claim so long as he has a logical nexus to a federally funded program; meaning that he is either an intended beneficiary, an applicant, or a participant. See United States v. Harris Methodist Forth Worth, 970 F.2d 92, 97 (5th Cir. 1992) (holding that doctors who are participants in federal program may bring Title VI action); Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981) (employing a logical nexus test for a Title VI claim); Md. State Conf. of NAACP Branches, 72 F. Supp. 2d at 567

14

(adopting the zone of interests test); <u>Bryant</u>, 998 F. Supp. at
446 (recognizing that the Simpson Doctrine/intended beneficiary
test is too strict a standard).  Such a standard comports with
the plain language of the statute, which prohibits any person
from being "subjected to discrimination" by any entity receiving
federal financial assistance.  <u>See</u> 42 U.S.C. §2000d (2006);
<u>Bryant</u>, 998 F. Supp. at 445 ("The interests arguably to be
protected by Title VI, then, are those of persons against whom
federally funded programs discriminate.").  It also furthers the
twin aims of Title VI, to prevent discrimination by entities
receiving federal funds and to provide citizens with effective
protection against discrimination.  <u>See</u> <u>Cannon v. Univ. of
Chicago</u>, 441 U.S. 667, 704, 99 S. Ct. 1946 (1979).

In his complaint, Plaintiff creates a logical nexus between
the alleged discrimination and his contract with Defendants that
is sufficient to withstand a motion for dismissal.  The facts
before this court are that HAWS receives federal funding for its
housing program, and that Plaintiff was under a contract to
repair and maintain the housing facilities.  In this situation,
Plaintiff is a private third party who benefits from the contract
created between HAWS and the federal government.  Though not a
direct and intended beneficiary of the affordable housing
project, Plaintiff still participates in the program by receiving
profitable contracts.[7]

---

[7] While the court considers Plaintiff's relationship with
Defendants substantial enough for purposes of Title VI, such a
(continued...)

15

Allowing Defendants to subject Plaintiff to discrimination without fear of losing federal funding offends both the purpose and plain language of Title VI.  Title VI exists to prevent federal funds recipients from discriminating.  When a recipient, such as Defendant, "violates conditions of Spending Clause legislation, the wrong done is the failure to provide what the contractual obligation requires; and that wrong is "made good" when the recipient <u>compensates</u> the Federal Government or a third-party beneficiary [as in this case] for the loss caused by that failure."  <u>Barnes v. Gorman</u>, 536 U.S. 181, 189, 122 S. Ct. 2097, 2102 (2002) (citation omitted).  Accordingly, this court denies Defendants' motion to dismiss the Title VI action.

### 2. Plaintiff's Section 1981 Claim

Defendants argue that the court should dismiss Plaintiff's § 1981 claim because this statute is not applicable to national origin discrimination claims and because Plaintiff fails to allege the <u>Monell</u> element in his complaint—that the discrimination resulted from HAWS's official policy or custom.

This court must first address whether Plaintiff sufficiently alleged a claim for racial discrimination to proceed under § 1981.  Section 1981 states:  "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and

---

[7](...continued)
result may not be same in instances where a contract has not yet been formed.

16

to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (2006). Courts have interpreted this statute much more narrowly than claims under Title VI. Under § 1981, there is no cause of action for national origin discrimination; a plaintiff must allege that the discrimination was racially motivated. <u>St. Francis College v. Al-Khazraji</u>, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987); <u>Schilling v. Rutherford Pediatrics, P.A.</u>, 346 F. Supp. 2d 828, 836 (W.D.N.C. 2004). A claim may still be maintained, however, if a plaintiff alleges that the discrimination is attributable to both race and national origin. <u>Magana v. Northern Mariana Islands</u>, 107 F.3d 1436, 1447 (9th Cir. 1997); <u>Manzanares v. Safeway Stores, Inc.</u>, 593 F.2d 968, 971 (10th Cir. 1979); <u>Davis v. Boyle-Midway, Inc.</u>, 615 F. Supp. 560, 561 (D. Ga. 1985).

Plaintiff asserts that Defendants discriminated against him both on account of his national origin and on the fact that he is not black. In his proposed First Amended Complaint, Plaintiff states that HAWS "intended to, and did, discriminate against the Plaintiff because of his race." (Proposed First Am. Compl. ¶ 35.) Plaintiff claims that the decision to replace him with a black contractor was motivated by the fact that he is "Caucasian and originally from Yugoslavia." (<u>Id.</u> ¶ 37.) Both of these assertions demonstrate that the crux of Plaintiff's discrimination claim is racially based. Plaintiff, therefore,

17

sufficiently alleged that his race was the cause for the discrimination.

This court must also address whether Plaintiff adequately alleged the <u>Monell</u> element in his § 1981 claim. The proper legal framework for analyzing a plaintiff's § 1981 claim against a state actor is through § 1983. <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995) (citing <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 109 S. Ct. 2702 (1989)).[8] In order to establish liability under § 1983, "a plaintiff must prove two essential elements: (1) that the defendants acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional right as a result of that action." <u>Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.</u>, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004). The "under color of state law" element imposes upon Plaintiff the burden of showing that an official policy or custom of Defendants led to the discrimination. <u>Id.</u>; <u>Dennis</u>, 55 F.3d at 156 (citation omitted). This requirement exists because a municipality cannot be liable under § 1983 (or § 1981) based on the doctrine of respondeat superior. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

---

[8] The Fourth Circuit has interpreted the Civil Rights Act of 1991 in a manner that does not affect the Supreme Court's interpretation of § 1981 in <u>Jett</u>. <u>See</u> <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 n.1 (4th Cir. 1995).

18

Courts have interpreted the "official policy or custom" component to require "[a] § 1983 plaintiff alleging § 1981 race discrimination [to] adequately plead and ultimately prove three elements:  (1) the existence of an official policy or custom (2) that is fairly attributable to the local government (3) that proximately caused the underlying § 1981 race discrimination." Id. (citing <u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 338 (4th Cir. 1994)).  An official policy or custom that gives rise to municipal liability may exist in four different situations:  "(1) through an express policy . . . ; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003) (citation and internal quotations omitted).

Plaintiff's proposed amended complaint sufficiently alleged the <u>Monell</u> element.  Plaintiff claims that either Mr. J. Reid Lawrence or Ms. Karen Durell is HAWS's final policymaker, and that they "knew of and approved or acquiesced in the decision to terminate the Plaintiff's contract."  (Proposed First Am. Compl. ¶¶ 37-39.)  These allegations are in line with the second category of an official policy or custom that gives rise to liability mentioned above.  They are sufficient to put Defendants "on notice of the nature of the claim against them and the grounds on which it rests." <u>Jordan by Jordan</u>, 15 F.3d at 340.

19

Additionally, the assertions in Plaintiff's pleading conform to the pleading standard required by § 1983, because it is not beyond doubt that a set of facts could support his claim. <u>See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 113 S. Ct. 1160 (1993). Therefore, Defendants' motion to dismiss Plaintiff's § 1981 claim will be denied.

### 3. Plaintiff's Claims Against Unknown Defendants

Defendants argue that Plaintiff's claims against the unknown named defendants should be dismissed because Plaintiff fails to state a claim against them. Plaintiff did not challenge this motion in his response. Upon reviewing the status of the case, this court concludes that dismissal of the claims against the unknown defendants is appropriate.

In order to survive a motion to dismiss, a complaint should include a "short and plain statement" of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). Such a statement need not include every evidentiary detail, but should include more than mere conclusory allegations to show that Plaintiff is not engaging in a fishing expedition. <u>See DM Research, Inc. v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999). Generally, doe defendants are allowed to remain in a claim as stand-ins for real parties until their identity is learned through discovery. <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980). In this case, Plaintiff has had a significant amount of time to learn of any "doe" identities. His

20

decision not to respond to this motion to dismiss suggests that there are no other possible defendants. Accordingly, the court will grant Defendants' motion to dismiss the claims against the Doe Defendants.

**IV. CONCLUSION**

IT IS HEREBY ORDERED, for the reasons stated herein, that Defendants' Motion to Strike [17] is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [19] is DENIED as to both the Title VI and Section 1981 claims and is GRANTED as to dismissing the Unknown Doe Defendants.

This the 29th day of December 2006.

_____
United States District Judge